UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 10-80254-CV- Ryskamp/Vitunac

SUSANNE STONE MARSHALL, individually
and on behalf of a class of similarly situated,

    Plaintiffs,

v.

BARBARA PICOWER, individually, and as
Executor of the Estate of Jeffry M. Picower,
and as Trustee for the Picower Foundation
and for the Trust f/b/o Gabriel H. Picower;
CAPITAL GROWTH COMPANY;
DECISIONS, INC.;
FAVORITE FUNDS;
JA PRIMARY LIMITED PARTNERSHIP;
JA SPECIAL LIMITED PARTNERSHIP;
JAB PARTNERSHIP;
JEMW PARTNERSHIP;
JF PARTNERSHIP;
JFM INVESTMENT COMPANIES;
JLN PARTNERSHIP;
JMP LIMITED PARTNERSHIP;
JEFFRY M. PICOWER SPECIAL COMPANY;
JEFFRY M. PICOWER, P.C.;
THE PICOWER FOUNDATION;
THE PICOWER INSTITUTE OF MEDICAL RESEARCH;
THE TRUST F/B/O GABRIELLE H. PICOWER.
_____/

**PLAINTIFF'S LOCAL RULE 12.1 CIVIL RICO CASE STATEMENT**

    Plaintiff, Susanne Stone Marshall ("Plaintiff" or "Marshall"), pursuant to Southern District of Fla. Local Rule 12.1, respectfully submits the following Civil RICO Case Statement.

    Marshall's Amended Complaint (DE 7) contains detailed allegations setting forth the elements of her claims pursuant to the Florida Civil Remedies for Criminal Practices Act Chapter 772, Florida Statutes ("Florida RICO"). This Civil RICO Case Statement does not serve to

restrict, replace, or otherwise limit the allegations of the Amended Complaint.

Marshall is continuing her investigation and reserves the right to rely on any facts, documents, or other evidence that she may develop or that may come to her attention at a later time. Marshall reserves her right to supplement this Civil RICO Case Statement as needed as she discovers additional evidence.

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d) or §§ 772.101(1), (2), (3) and/or (4), Fla. Stat.**

Marshall has alleged violations of § 772.103(4), Fla. Stat., in Count IV of the Amended Complaint.

2. **List each defendant, and separately state the misconduct and basis of liability of each defendant.**

As alleged in the Amended Complaint, the RICO defendants are as follows:

### A. Barbara Picower, individually and as Executor of the Estate of Jeffry M. Picower

The main wrongdoer was Jeffry M. Picower ("Picower," who shall hereinafter be included in any references to "Defendants.") Picower died at his residence in Palm Beach, Florida on October 25, 2009. Defendant Barbara Picower, Picower's surviving spouse is the Executor of the Estate of Jeffry M. Picower and a Defendant in this action. Picower was a highly sophisticated investor, accountant and attorney who knowingly participated for over 20 years in the Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff") through his investment firm Bernard L. Madoff Investment Securities Corporation LLC ("BLMIS").

Picower had vast experience in the purchase and sale of businesses, including health care and technology companies. He had also been personally responsible for managing hundreds of millions, if not billions, of dollars of assets, and he had developed uncommon sophistication in trading securities and evaluating returns therefrom. Upon information and belief, Picower was

closely associated with Madoff, both in business and socially, for the last 30 years. Picower held an individual BLMIS account in the name of "Jeffry M. Picower," with an account address of 1410 South Ocean Boulevard, Palm Beach, Florida. Picower was a trustee of Defendant Picower Foundation, and Chairman of the Board of Defendant Decisions Incorporated.

For the reasons set forth in the Amended Complaint, Picower knew he was participating in and profiting from Madoff's fraudulent scheme because of the absurdly high rates of return that his accounts (and the accounts of the other Defendants, which Picower controlled) supposedly, but could not have legitimately, achieved. These rates of return sometimes exceeded 100% annually, and were even as high as 950% per year.

Moreover, Picower through the other Defendants and with the assistance of their agent, April Frielich, directed BLMIS to prepare account statements for the Defendants reflecting not actual trading results but the rates of return Picower "wanted to achieve." BLMIS complied with these directions, and the vast majority of the purported "profits" in the Defendants' accounts were not a result of the actual purchase and sale of securities.

Picower, the other Defendants, and their agents who directly participated in the Madoff Ponzi scheme knew or should have known that the funds used to pay the Defendants' fictional profits could have only come from the accounts of other BLMIS customers.[1] Picower and the other Defendants converted the cash in other innocent BLMIS customer accounts for their own personal benefit with the agreement and assistance of Madoff and his agents. Picower was reportedly the largest beneficiary of the Madoff Ponzi scheme. Picower and the other Defendants withdrew $6.7 billion from their BLMIS accounts from 1995 through 2007, and a total of at least $7.2 billion. This amount is astounding not only in its absolute sense, but also

---

[1] As used herein, the term "customers" includes not only those with actual accounts with BLMIS, but also those who did not have BLMIS accounts in their own names but had deposited funds with BLMIS through "feeder funds".

because it represents approximately 35% of the total *cash* losses suffered by all BLMIS customers.[2]

Picower, is liable to Plaintiff and the class she represents (the "Class") under §722.103(4), Fla. Stat., for conspiring with Madoff to commit substantive Florida RICO violations. As set forth in detail below, Madoff clearly committed numerous criminal acts of racketeering which injured the Plaintiff and the Class. These acts include violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud) and Chapter 817 of Florida Criminal Code (fraudulent practices, false pretenses, and fraud generally). Although not required to establish the Defendants' liability under § 772.103(4), Picower and the other Defendants, as member of the conspiracy, also committed overt acts of racketeering by, among other things, using interstate mails, telephone communications and wires to direct fictional trades and returns in the Defendants' BLMIS accounts and to file false tax returns. (*See* Am. Compl. ¶¶ 55-73). Exhibit "D" to the Amended Complaint contains the details and dates of the numerous transfers of funds from Defendants' BLMIS accounts to Picower and the Defendants by use of the U.S. mails and/or by wire transfers.

### B. Picower Entity Defendants

The Amended Complaint also asserts the RICO conspiracy claims against the following entities affiliated with Picower: Capital Growth Company; Decisions, Inc.; Favorite Funds; JA Primary Limited Partnership; JA Special Limited Partnership; JAB Partnership; JEMW Partnership; JF Partnership; JFM Investment Companies; JLN Partnership; JMP Limited Partnership; Jeffry M. Picower Special Company; Jeffry M. Picower, P.C.; The Picower Foundation; The Picower Institute of Medical Research; and The Trust F/B/O Gabrielle H.

---

[2] The Trustee of the BLMIS liquidation proceedings (as described in Item 3 below) estimates that the total amount of cash invested, less the total amount of cash withdrawn by all customers is just over $20 million.

Picower (collectively the "Picower Entity Defendants"). Plaintiff alleges that the Picower Entity Defendants have all received funds that belong to the Plaintiff and/or Class members as a result of their conspiracy with Madoff and his agents to violate Florida RICO. As set forth in the Amended Complaint, many of these entities served no purpose except to participate in the Madoff Ponzi scheme.

3. **List the wrongdoers, other than the defendants listed above, and separately state the misconduct of each wrongdoer.**

### A. Madoff and BLMIS

As set forth in detail in Count IV of the Amended Complaint, the Defendants participated and conspired with non-defendant Madoff to use BLMIS to convert the funds of other BLMIS account holders and customers.

Shortly before his December 11, 2008 arrest, Madoff confessed that he had been conducting a Ponzi scheme through BLMIS since at least the early 1990s, and he estimated BLMIS' liabilities to be approximately $50 billion. On March 10, 2009, the federal government filed an eleven-count information against Madoff in the criminal case styled *U.S. v. Madoff*, CV-No 09-CR-213 (S.D.N.Y) (which is attached as Exhibit "B" to the Amended Complaint). At a plea hearing on March 12, 2009, Madoff pled guilty to each count of the criminal information and admitted under oath that he "operated a Ponzi scheme through. . . [BLMIS]." Madoff also admitted that "[a]s I engaged in my fraud, I knew what I was doing (was) wrong, indeed criminal." *See* Exhibit "C" to amended Complaint. Madoff was sentenced to 150 years in prison.

Madoff also admitted that, during the relevant time period, he never actually invested any of the funds he received from BLMIS customers (which would include the Defendants), instead depositing the funds into a bank account. Madoff never actually purchased of sold any securities

5

in BLMIS accounts, instead using client funds simply to pay other, different, clients' purported returns and redemption of principal.

Madoff pled guilty to mail fraud for using the U.S. mails and interstate commercial carriers from the early 1980s through December 2008 to defraud thousands of BLMIS account holders (18 U.S.C. § 1341) and to wire fraud (18 U.S.C. § 1342). (*See* Am. Compl. Ex. B, Count Three and Four, ¶¶ 18-21.)  Both instances of admitted criminal conduct serve as predicate acts of racketeering activity under Florida RICO.

BLMIS is currently insolvent and is being liquidated by Irving H. Picard, Esq. (the "Trustee") as Trustee for the liquidation of the business of BLMIS, under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq*. ("SIPA"), in the bankruptcy proceedings styled *In re: Bernard L. Madoff Investments Securities LLC*, Case No. 08-01789 (BRL), pending in the United States Bankruptcy Court, Southern District of New York (the "SIPA Liquidation").

The Trustee has commenced an adversary proceeding against the Picowers and their related entities named herein in the SIPA Liquidation (Adv. Pro. No. 09-1197) (the "Trustee's Complaint").  A copy of the Trustee's Complaint is attached as Exhibit "A" to the Amended Complaint in this action.  Many of the factual allegations in the Plaintiffs' Amended Complaint are based on the Trustee's Complaint, which in turn is based on the Trustee's extensive investigation of Picower and his BLMIS accounts.

### B. April Freilich

Picower and the other Defendants used April Freilich as their agent to assist in the Defendants' wrongful conduct.  Freilich is an officer and/or director of many of the Picower entity Defendants.  Freilich was Picower's long-time close personal friend and business associate who carried out his directions in connections with the Defendants' participation in the

6

Madoff/BLMIS scheme.  (Am. Compl. ¶ 48).

4.      **List the victims, and separately state when and how each victim was injured.**

Marshall, along with the thousands of Class members, are victims of the Defendants' conspiracy with Madoff to commit substantive RICO violations.  The Defendants directed BLMIS to generate fictional profits in their BLMIS accounts, which BLMIS paid to Defendants. Defendants knew that those false "profits" were funds belonging to other BLMIS account holders and customers, including Plaintiff and the Class members, thereby converting those funds.  The injury to Marshall and the Class occurred over the course of Defendants' twenty year participation in the Madoff Ponzi scheme, beginning from the time Marshall and/or the Class members originally transferred funds to BLMIS.

5.      **Describe in detail the pattern of racketeering activity or collection of an unlawful debt for each RICO claim.  A description of the pattern of racketeering/criminal activity shall:**

   a.    **separately list the predicate acts/incidents of criminal activity and the specific statutes violated by each predicate act/incident of criminal activity;**

Madoff's racketeering activity, which serves as the basis of Plaintiff's claims against Defendants for conspiracy and solicitation to commit violations of Florida RICO, § 772.103(4), Fla. Stat., has been alleged in detail in the Amended Complaint and the attachments thereto, which include: (1) the March 10, 2009 eleven-count criminal information filed by the United States Attorney (Am. Compl., Ex. B) and (2) March 12, 2009 transcript of Madoff's guilty plea (Am. Compl., Ex. C).  Madoff's pled guilty to committing the predicate acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and conduct that would constitute a violation of § 817.034 of the Florida Criminal Code (fraudulent practices, false pretenses, and fraud generally).  (Am. Compl. ¶¶ 98 - 102).

The Amended Complaint also includes detailed allegations, including dates, of the

7

Defendants' predicate acts and incidents of criminal activity. Specifically, Picower and the other Defendants committed violations of wire fraud (18 U.S.C. § 1341), mail fraud (18 U.S.C § 1343) and § 817.034 of the Florida Criminal Code.

(1) The Amended Complaint alleges with particularly numerous communications from 2005 through 2007 of where Picower and the Defendants, by themselves and/or through their agent April Freilich, directed BLMIS to execute fictitious and backdated transactions in their BLMIS accounts in order to generate fictitious profits in those accounts. (Am. Compl. ¶¶ 55-64.)

(2) Picower and the Defendants caused the preparation and filing of false tax returns in 2007, 2005, 2004, 2003, 2002, and 2002, reflecting fictitious and backdated transactions in the Defendants' BLMIS accounts. (Am. Compl. ¶¶ 65-73.)

(3) Exhibit "D" to the Amended Complaint contains the details and dates of the over 500 transfers of funds from Defendants' BLMIS accounts to Picower and the Defendants totaling $6.7 billion from 1995 to 2008. The Trustee has recently stated that Defendants received at least $7.2 billion from BLMIS.

> **b.** **separately state the dates of the predicate acts/incidents of criminal activity, the participants and a description of the facts surrounding each predicate act/incident of criminal activity**;
>
> See Response to Item 5.a. above.
>
> **c.** **if the RICO claim is based on the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, fraud in connection with a case under U.S.C. Title 11, or fraud as defined under Chapter 817, Fla. Stat., the "circumstances constituting fraud or mistake shall be stated with particularity", Fed. R. Civ. P. 9(b) (identify the time, place, and contents of the misrepresentation or omissions, and the identity of persons to whom and by whom the misrepresentations or omissions were made)**;
>
> See Response to Item 5.a. above.

      **d.**     **state whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity;**

To the best of Plaintiff's knowledge, there has not been a criminal conviction of any of the Defendants for any of their predicate acts/incidents of criminal activity. However, according to public news accounts, federal prosecutors in Manhattan were investigating Picower's complicity in the Madoff Ponzi scheme prior to his death. *See, e.g.*, Amir Efrati, *Picower, Madoff Case Figure, Is Dead at 67*, Wall St. J., Oct. 26, 2009, at C1. Madoff has been criminally convicted of numerous instances of criminal activity, including criminal acts that constitute racketeering activity under Florida RICO. *See* Response to Item 3 and 5.a above.

      **e.**     **describe in detail the perceived relationship that the predicate acts/incidents of criminal activity bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or "part of a common plan"; and**

These predicate acts set forth above were related and had similar purposes, participants, results, victims, and methods of commission. In general terms, Madoff engaged in a massive Ponzi scheme through BLMIS to defraud thousands of victims through the use of, among other things, criminal conduct constituting mail and wire fraud in violation of Florida RICO. Picower and the other Defendants conspired with Madoff and BLMIS to commit these RICO violations. Picower and the other Defendants themselves committed numerous acts of racketeering in furtherance of the conspiracy and to convert the funds of other innocent BLMIS account holders and customers. *See* Items 2, 3, and 5.a above.

      **f.**     **explain how the predicate acts/incidents of criminal activity amount to or pose a threat of continued criminal activity.**

The Amended Complaint (including attachments thereto) alleges Madoff's continued criminal activity for a substantial period of time from at least the early 1990s through December of 2008. The Amended Complaint has also alleged the Defendants' racketeering

9

activity in furtherance and in aid of their conspiracy with Madoff for over twenty years, and at least since 1995.

6. **Describe in detail the enterprise for each RICO claim. A description of the enterprise shall:**

   a. **state the names of the individuals, partnerships, corporations, associations, or other entities constituting the enterprise;**

   At all relevant times, BLMIS constituted an "enterprise" within the meaning of §772.102(3), Fla. Stat., which defines an "enterprise" as "any individual, sole proprietorship, partnership, corporation, business trust . . . or any other legal entity or any uncharted union, association, or group of individuals associated in fact although not a legal entity. . . ."

   b. **describe the structure, purpose, roles, function, and course of conduct of the enterprise;**

   Using the BLMIS enterprise, Madoff executed a scheme to defraud Plaintiff and the Class members. The Defendants conspired with Madoff to use BLMIS with the overall goal and purpose of enriching themselves and those who aided and abetting them by converting the funds of other BLMIS account holder and customers. According to pleadings filed by the Securities Exchange Commission and the Trustee (including the Trustee's Complaint against Picower), BLMIS was comprised of three business units: investment advising, market making, and proprietary trading. It is alleged that Madoff conducted the Ponzi scheme through the BLMIS investment advisory business unit.

   c. **state whether any defendants are employees, officers, or directors of the enterprise;**

   To the best of Plaintiff's knowledge, the Defendants are not employees, officers or directors of the BLMIS enterprise. At all relevant times, Madoff was a director and officer of BLMIS and otherwise directed its affairs.

     **d.**     **state whether any defendants are associated with the enterprise, and if so, how;**

Each of the Defendants were associated with the BLMIS enterprise in that they directed BLMIS to execute fictitious transactions in the Defendants' BLMIS accounts in connection with a scheme to use BLMIS to convert the funds of other BLMIS customers.  *See also* Response to Item 6.c above.

     **e.**     **explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise;**

Madoff violated §§ 772.103 (1) – (3), Fla. Stat., by conducting the affairs of the BLMIS enterprise through a pattern of racketeering activity which involved multiple violations of the criminal laws of the United States and Florida.  Madoff pled guilty to committing the predicate felonies of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and conduct that would constitute a violation of § 817.034 of the Florida Criminal Code (fraudulent practices, false pretenses, and fraud generally).  Picower and the other Defendants each participated and conspired with Madoff by directing fictitious trading activity in the Defendants' BLMIS accounts, and by then withdrawing the resulting fictitious "profits" from those accounts.  *See also* Response to Items 2, 3, 5.a and 5.d above.

     **f.**     **state whether you allege (i) that the defendants are individuals or entities separate from the enterprise, or (ii) that the defendants are the enterprise itself, or (iii) that the defendants are members of the enterprise; and**

Each of the Defendants, while an individual or entity associated with the BLMIS, is a separate person distinct from BLMIS itself.  Moreover, Madoff, while an individual associated with BLMIS, is a separated person distinct from BLMIS itself.

     **g.**     **if you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the racketeering activity**.

See Responses to Items 6.e and 6.f above.

7. **State whether you allege, and describe the detail, how the pattern of racketeering/criminal activity and the enterprise are separate or have they merged into one entity.**

    See Response to Item 6.b above.

8. **Describe the relationship between the activities and the pattern of racketeering/criminal activity. Discuss how the racketeering/criminal activity differs from the usual and daily activities of the enterprise, if at all.**

    The activities alleged in Count IV of the Amended Complaint are acts and circumstances that demonstrate a conspiracy between Madoff and Picower and the other Defendants.

9. **Describe what benefits, if any, the enterprise and each defendant received from the pattern of racketeering/criminal activity.**

    As alleged in the Amended Complaint, by conspiring with Madoff to commit violations of Florida RICO, the Defendants were able to enrich themselves and those who aided and abetted them by withdrawing $7.2 billion in fictitious profits, including $6.7 billion from BLMIS from 1995 through 2007. These "profits" were actually the funds of other innocent BLMIS account holders and customers. It is believed that Picower and the other Defendants were the largest beneficiaries of the Madoff Ponzi scheme. The Defendants' withdrawals from their BLMIS accounts represent approximately 35% of the total cash losses suffered by victims of the Madoff Ponzi scheme. *See also* Response to Item 2, n.2.

10. **Describe the effect of the enterprise's activities on interstate or foreign commerce.**

    The BLMIS enterprise's activities effected interstate and foreign commerce. Madoff perpetrated his Ponzi scheme through BLMIS, which was located in New York, upon thousands of BLMIS account holders located throughout the United States (including Florida) and abroad. The Defendants' activities also effected interstate and foreign commerce, in that they converted the funds of these BLMIS account holders. Moreover, Picower and Ms. Picower resided in and committed wrongful acts from their residence in Palm Beach County, Florida. Finally, BLMIS

transmitted converted funds to Picower and the other Defendants across state lines.

11. **If the complaint alleges a violation of 18 U.S.C. § 1962(a) or § 772.103(1), Fla. Stat., provide the following information:**

    a. describe the pattern of income/proceeds derived, directly or indirectly, from a pattern of racketeer-ing/criminal activity, or through the collection of an unlawful debt;

    b. state who received the income/proceeds derived from the pattern of racketeering/criminal activity or through the collection of an unlawful debt and the date of that receipt;

    c. describe how and when such income/proceeds were invested or used in the acquisition of the establishment or operation of the enterprise;

    d. describe how you were directly injured by the investment or use; and

    e. state whether the same entity is both the liable "person" and the "enterprise" under § 1962(a)/§ 772.103(1) claim.

The Amended Complaint does not allege a violation of 18 U.S.C. § 1962(a) or § 772.103(1), Fla. Stat., against the Defendants.

12. **If the complaint alleges a violation of 18 U.S.C. § 1962(b) or § 772.103(2), Fla. Stat., provide the following information:**

    a. describe in detail the acquisition or maintenance of any interest in or control of the enterprise;

    b. describe when the acquisition or maintenance of an interest in or control of the enterprise occurred;

    c. describe how you were directly injured by this acquisition or maintenance of an interest in or control of the enterprise; and

    d. state whether the same entity is both the liable "person" and the "enterprise" under the § 1962(b)/§ 772.103(2) claim.

The Amended Complaint does not allege a violation of 18 U.S.C. § 1962(b) or § 772.103(2), Fla. Stat., against the Defendants.

13. **If the complaint alleges a violation of 18 U.S.C. § 1962(c) or § 772.103(3), Fla. Stat.,, provide the following information:**

    a. state who is employed by or associated with the enterprise;

13

      b.      **describe what each such person did to conduct or participate in the enterprise's affairs;**

      c.      **describe now you were directly injured by such person's conducting or participating in the enterprise's affairs; and**

      d.      **state whether the same entity is both the liable "person" and the "enterprise" under the § 1962(c)/§ 772.103(3) claim.**

The Amended Complaint does not allege a violation of 18 U.S.C. § 1962(b) or § 772.103(2), Fla. Stat., against the Defendants.

**14.**    **If the complaint alleges a violation of 18 U.S.C. § 1962(d) or § 772.103(4), Fla. Stat, describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement.**

Count IV of the Amended Complaint alleges a violation of § 772.103(4), Fla. Stat., based on a conspiracy to commit violations of Florida RICO, with the overall objective of converting the funds of BLMIS account holders and customers. The Defendants concealed the conspiratorial agreement, so the precise date and substance of the agreement is unknown, but the parties' conduct reveals that the agreement dates back to at least 1995, and may date back as far as 1983, which coincides with the earliest record evidence available to the Plaintiff of some of the Defendants' receipt of funds from their BLMIS accounts.

**15.**    **Describe the injury to business or property.**

Plaintiff and the Class members have been injured in their business and property as a direct and proximate result of the Defendants' RICO violations. Each has suffered financial injury and damages since the time they originally deposited funds with BLMIS, which include, but are not limited to, lost investment principal, income and returns on their bona fide cash investments at BLMIS, and tax payments made in connection with reported but non-existent trading profits.

16. **Describe the nature and extent of the relationship between the injury and each separate RICO violation.**

As alleged in the Amended Complaint, the Defendants' RICO conspiracy deprived Plaintiff and the Class members of the funds that they deposited with BLMIS and caused damages as identified in Response to Item 15 above.

17. **For each claim under a subsection of § 1962 or § 772.103, Fla. Stat., list the damages sustained by reason of each violation, indicating the amount for which each defendant is liable.**

The Defendants are jointly and severally liable for damages to Plaintiff and the Class members. The total loss sustained by the Plaintiff and thousands of Class members has not yet been quantified. However, the Defendants have received $7.2 billion in cash from BLMIS, which was money that belonged to the Plaintiff and the Class members. The amount of the total loss sustained by the Class member will be ascertained by discovery of BLMIS' account records, which are in the possession of the Trustee.

18. **Provide any additional information you feel would be helpful to the Court in processing your RICO claim.**

Plaintiff has no additional information to provide at this time. This case is in its very early stages, and discovery has not yet begun. Plaintiff is continuing its investigation and reserves the right to rely on any facts, documents, or other evidence that it may develop or that may come to its attention at a later time and to supplement the RICO Case Statement as needed based on the discovery of additional evidence.

DATED this 25th day of March, 2010.

Respectfully submitted,

s. Joseph G. Galardi
James W. Beasley, Jr.
Florida Bar No. 145750
Joseph G. Galardi
Florida Bar No. 180572
BEASLEY HAUSER KRAMER
LEONARD & GALARDI, P.A.
505 South Flagler Drive, Suite 1500
West Palm Beach, Florida 33401
Telephone:  (561) 835-0900
Facsimile:  (561) 835-0939
galardi@beasleylaw.net
*Attorneys for Plaintiff and the Class*

-and-

Lesley Blackner, Esquire
Florida Bar No. 654043
BLACKNER, STONE & ASSOCIATES
123 Australian Avenue
Palm Beach, FL  33480
(561)659-5754
(561)659-3184 (fax)
lblackner@aol.com
*Attorneys for Plaintiff and the Class*

Helen Davis Chaitman
New York Bar No. 1236678
BECKER & POLIAKOFF
45 Broadway 11th Floor
New York, NY 10006
(212) 599-3322
(212) 557-0295 (fax)
*Attorneys for Plaintiff and the Class*
*(Motion for Special Appearance pending)*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of March 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              s/ Joseph G. Galardi
                                                Joseph G. Galardi

**SERVICE LIST**

**Via Facsimile and Mail:**
William D. Zabel, Esq.
Marcy Ressler Harris, Esq.
Schulte Roth & Zabel, LLP
919 Third Avenue
New York, NY  10022
Telephone: (212) 756-2351
Facsimile: (212) 593.5955
william.zabel@srz.com
marcy.harris@srz.com
*Attorneys for all Defendants*